NOTICE
Decision filed 08/05/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 251002-U

NO. 5-25-1002

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| CREDIT ACCEPTANCE CORPORATION, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 25-AR-88 |
| | ) | |
| JOSEPH ARMSTRONG, | ) | Honorable |
| | ) | Christopher T. Kolker, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Presiding Justice Cates and Justice Hackett concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Where the record on appeal fails to include a report of proceedings or a bystander's report pursuant to Illinois Supreme Court Rule 323(c) (Ill. S. Ct. R. 323(c) (eff. July 1, 2017)) detailing what transpired during the circuit court's hearing on Credit Acceptance Corporation's motion to compel arbitration, we affirm that portion of the circuit court's order selecting an attorney to serve as arbitrator.

¶ 2    On March 21, 2020, Joseph Armstrong (Armstrong) purchased a vehicle from Cardinal Buick GMC, Inc. (Cardinal Buick) pursuant to a retail installment contract that contained an arbitration clause. Cardinal Buick immediately assigned the contract to Credit Acceptance Corporation (Credit Acceptance).

¶ 3    After Armstrong missed installment payments, Credit Acceptance repossessed the vehicle. On February 7, 2025, Credit Acceptance filed suit against Armstrong to collect the balance owed under the contract. Armstrong filed an initial counterclaim against Credit Acceptance alleging

1

conversion, breach of peace, violation of the Uniform Commercial Code, and unfair and deceptive acts and practices.

¶ 4 On May 30, 2025, Credit Acceptance filed a motion to dismiss Armstrong's counterclaims. Credit Acceptance prayed for an order dismissing the counterclaims with prejudice. On August 27, 2025, Armstrong filed an amended answer and asserted counterclaims which essentially mirrored the original counterclaims but pled the claims separately.

¶ 5 On September 22, 2025, Credit Acceptance filed a motion to compel Armstrong to participate in arbitration pursuant to the terms of the retail installment contract alleging that the arbitration clause would encompass the allegations in Armstrong's amended counterclaim. Armstrong did not respond to the motion to compel arbitration.

¶ 6 On November 12, 2025, the circuit court entered an order granting Credit Acceptance's motion to compel arbitration and appointed a local attorney to serve as the parties' arbitrator. Credit Acceptance timely filed a notice of interlocutory appeal on December 11, 2025.

¶ 7 I. BACKGROUND

¶ 8 Armstrong obtained a loan to purchase a 2017 Buick Envision from Cardinal Buick. Cardinal Buick assigned the loan to Credit Acceptance, which is a Michigan-based company. Armstrong defaulted on his vehicle loan. At the time of the default, the balance owed was $16,306.63. The retail installment contract also required Armstrong to pay $350 in attorney fees, bringing the total amount Armstrong owed to $16,656.63.

¶ 9 Page one of the retail installment contract at issue in this appeal contains a box labeled "ARBITRATION," that states

"This Contract contains an Arbitration Clause that states You and We may elect to resolve any dispute by arbitration and not by court action. See the Arbitration Clause on

2

Page 5 of this Contract for the full terms and conditions of the Arbitration Clause. By initialing below, you confirm that you have read, understand and agree to the terms and conditions in the Arbitration Clause."

Armstrong initialed this provision. Later in the contract, the more detailed arbitration clause provided:

"Whoever first elects arbitration may choose to arbitrate under the rules and procedures of either JAMS or the American Arbitration Association; however in the event of a conflict between these rules and procedures and the provisions of this Arbitration Clause *** [the parties] agree that this Arbitration Clause governs for that specific conflict. *** If neither JAMS nor the American Arbitration Association is able or willing to serve, and You and We can't otherwise agree on a substitute administrator or arbitrator, then a court with appropriate jurisdiction shall appoint an arbitrator."

¶ 10 Credit Acceptance filed a motion to compel arbitration on September 22, 2025. The motion sought to compel Armstrong to initiate arbitration. Specifically, Credit Acceptance stated:

"Given that the scope of the Arbitration Clause covers Armstrong's counterclaims and given Credit Acceptance's election to enforce the Arbitration Clause, Armstrong's counterclaims must be compelled to arbitration. And to avoid parallel proceedings, Credit Acceptance agrees to submit its claims to arbitration as well."

¶ 11 Armstrong did not file a written response. The motion was called for hearing on November 12, 2025, with Armstrong appearing *pro se* and Credit Acceptance's attorney present in court. The record on appeal contains no report of proceedings or a bystander's report pursuant to Illinois Supreme Court Rule 323(c) (Ill. S. Ct. R. 323(c) (eff. July 1, 2017)) detailing what transpired during the motion hearing. Following the hearing, the circuit court entered its order requiring the

3

parties to arbitrate "all claims." The circuit court further ordered arbitration to be conducted by a local Belleville law firm.

¶ 12    On December 11, 2025, Credit Acceptance timely appealed. For the following reasons, we affirm.

¶ 13                                    II. ANALYSIS

¶ 14    In Illinois, arbitration agreements are interpreted using contract law principles. *Keefe v. Allied Home Mortgage Corp.*, 2016 IL App (5th) 150360, ¶ 10. The primary objective of contractual construction "is to give effect to the intention of the parties." *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011) (citing *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007)). If the words used in the contract are unambiguous, courts must give those words their plain and ordinary meanings. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004).

¶ 15    The arbitration agreement involved in this appeal is governed by the Federal Arbitration Act (FAA) (9 U.S.C. § 1. *et seq.* (2018)). A "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms." (Internal quotation marks omitted.) *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). Section 2 of the FAA states that controversies arising out of "an agreement in writing to submit to arbitration *** shall be valid, irrevocable, and enforceable ***." 9 U.S.C. § 2 (2018); see also *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). In the existence of an arbitration agreement, courts "shall *** stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ***." 9 U.S.C. § 3 (2018); see *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024). When a court is satisfied that there is no issue regarding "the making of the agreement for arbitration ***[,] the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (2018). Given this legislative structure, "courts

4

must 'rigorously enforce' arbitration agreements according to their terms, [citation], including terms that 'specify *with whom* [the parties] choose to arbitrate their disputes,' [citation], and 'the rules under which that arbitration will be conducted.' " [Emphasis in original.] *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds Inc.*, 470 U.S. at 221; *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 683 (2010); *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989)).

¶ 16    In this case, Armstrong is a named party to the retail installment agreement assigned by Cardinal Buick to Credit Acceptance. The arbitration clause in that agreement states its intent to submit disputes to arbitration. On September 22, 2025, Credit Acceptance filed a motion asking the circuit court to "compel Armstrong to initiate arbitration proceedings within 60 days, and should he fail to do so, this Court should dismiss his counterclaim against Credit Acceptance with prejudice." Credit Acceptance's motion to compel arbitration asked the circuit court to find that the arbitration clause was valid and enforceable and that it encompassed Armstrong's counterclaims. The request for relief prayed for by Credit Acceptance, however, was not included in the plain language of the arbitration clause.

¶ 17    Pursuant to the express terms of the retail installment agreement, the person or entity who makes the decision to arbitrate may then select the arbitral entity—either JAMS or the American Arbitration Association. It is not clear which party makes such an election when Credit Acceptance has asked the circuit court to require Armstrong to initiate arbitration. We need not decide this issue, as the record herein is incomplete regarding the basis for the entry of the circuit court's order. Specifically, for reasons not clear from the record on appeal, the circuit court appointed a

5

local Belleville law firm to conduct the arbitration instead of one of the arbitral entities named in the retail installment agreement.

¶ 18    Credit Acceptance's appeal is based on its claim that the circuit court's order to arbitrate with a local arbitrator is erroneous because the express terms of the retail installment contract authorized Credit Acceptance—the party opting to arbitrate the dispute—to elect either JAMS or the American Arbitration Association as the arbitrator. However, as noted, Credit Acceptance was seeking to have Armstrong "initiate" arbitration, and looked to the circuit court for relief if Armstrong did not initiate arbitration within 60 days. Credit Acceptance wanted the circuit court to dismiss the counterclaims. This relief was not covered by the arbitration clause and could only have been granted by the circuit court.

¶ 19    As previously stated, the record on appeal is lacking either a report of proceedings for the November 12, 2025, motion hearing or a bystander's report pursuant to Supreme Court Rule 323(c). Without either report, Credit Acceptance has not provided this court with information supporting its claim that the circuit court's order was erroneous. As the Illinois Supreme Court has aptly stated:

> "[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 20    While we find that the record on appeal regarding the November 12, 2025, hearing is inadequate, we find that the issues raised are clear. Where "the record is simple and the claimed

6

errors are such that the court can easily decide them without the aid of an appellee's brief." *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 21    We find the record on appeal is not sufficiently complete for this court to determine that the circuit court's order was erroneous. Credit Acceptance failed to provide any contextual information about what transpired during the November 12, 2025, hearing. Without a record of proceedings, we have no basis to conclude that the circuit court's order was erroneous. *Id.* Accordingly, we affirm the circuit court's order.

¶ 22                              III. CONCLUSION

¶ 23    For the foregoing reasons, we affirm the order of the St. Clair County Circuit Court ordering the parties to arbitrate with the attorney selected by the circuit court.

¶ 24    Affirmed.